case number 22-3021 United States of America v Keith Matthews also known as Bain, also known as Bain, also known as Bain Appellant. Ms. Goetzel for the Appellant, Mr. Lenners for the Appellant. Good morning Ms. Goetzel. Good morning, may it please the court. Celia Goetzel for Appellant Keith Matthews. I'd like to reserve two minutes. Mr. Matthews asked his court to vacate his term of imprisonment and to vacate the discretionary conditions listed in the written judgment that were not ordered at sentencing. The district court did not have authority on April 5th to impose incarceration for the same conceded violations for which it had already imposed home detention months before on November 17th. The language of section 3583 which governs supervised release is plain and clear. The court may order the defendant to remain at his place of residence only as an alternative incarceration. Can I ask, is your position at bottom an either-or proposition? The district court can either impose imprisonment or home detention, but not both. Or is it at bottom a question about timing, which is the district court has to impose one sentence and it can include components of each, but the problem here is you think there were punishments imposed at two different times. So you do take the broader position it's either-or? We do take the broader position based on the plain text statute. The language only as an alternative to incarceration must be given some meaning. But why can't that mean, I'm sorry, why can't that mean that the district court could say I think I'd be justified in lock-up for a year, but as a matter of grace I'm going to lock you up for six months and put you on six months of home detention. Why isn't that consistent with the statutory language? So that is not the issue. That may be consistent with the statutory language. Okay, I don't want you to fight my hypothetical, I want you to answer my hypothetical. Is that consistent with the statutory language, yes or no? We would argue that it's not consistent with the statutory language, but we do understand how it has been viewed in cases as consistent with the statutory language. Is there any case that's held that that's not consistent with the statutory language? I don't believe there has been any challenge to that based on the plain text of the statutory language, but I'm aware. In this case that's not what happened. But I mean on that broader point that you can never do both, your best case in all of this is Matthews and Matthews is dispositively against you on that point. I'm sorry, I'm sorry, you're Matthews, Ferguson, I'm sorry. Ferguson isn't dispositively against, Ferguson isn't dispositively against me. It says you can have a component of imprisonment and a component of tension and the limiting principle is that the sum total of both can't exceed the stat max. To the extent that Ferguson implies that you can have both, implication in Ferguson is not explained or supported by its own reasoning. Cuts against you, let's say. Well, I think the reasoning in Ferguson works for us. The conclusion that Ferguson reaches does not flow from its reasoning. So the statutory, there's, doesn't really make sense because there's nothing in 3583E4 in the language that the court may impose home detention only as an alternative to incarceration that requires the court to sentence under the statutory maximum. So there, and the BOP doesn't credit home detention toward imprisonment. So there, and in fact, the Supreme Court has said that home detention is not official detention that can be credited towards a term of imprisonment. So there's really nothing in the statute that supports the condition that Ferguson and other cases have added that where 3583E4 would only apply to the statutory maximum. If it's not, if home detention is not even a big enough deal to trigger this offset, why would it be such a big deal to trigger your all or nothing? Once you do a tiny bit of one, you can't do any of the other. Because we're talking about supervised release here. The person is supposed to be released. The person is supposed to be getting rehabilitation on release. The point of supervised release is to have the person on release. So home detention is maybe imposed as an alternative to incarceration in this circumstance. It does make sense in that way. Let's suppose I, even if I have some sympathy or even if I were to agree with your argument, I think you've got a preservation problem here that I'm surprised the government didn't make more of in its briefing. But at page 100 of the appendix, Judge Leon, after having, you know, discussed all of this and said that he's going to place him in home detention, says at the top of the page, you know, depending upon how things work out when we come back on December 15th, I'll be in a position at that point to sentence him for violations. So A, he says, I'm not sentencing him now. I'll be in a position to sentence him then for violations that are proven, which also suggests that he's not revoking yet because he says that, like, we don't know what's been proven. And then he asks if there's any questions of government and he asks any questions of you. And you say, no, your honor, thank you. And he says, is that acceptable to the defense? And your response was, yes, thank you. So having had that interchange, how is it preserved? It's an argument that he had no authority to hold him. So my answer is twofold. First, the judge said, even though the judge said he wasn't sentencing him, it was, we viewed this as him sentencing him for the admission that he had just made. So a sentence on the admissions to the positive drug tests. So Mr. Matthews had conceded that he tested positive and this was a 60-day sanction, which- Where does he say 60 days? He says, we'll put him on home detention for 60 days. That's on page 98. Yeah. And he says, we'll continue him on supervision. Right. Because when you continue on supervision, because you don't have to revoke to give someone a sanction, you don't have to formally revoke to give somebody a sanction of home detention under the statute. It's an alternative. It's an alternative to revocation and incarceration. So now I'm really confused because you said that he'd been revoked and he can't be revoked twice. Now you're saying that he's not revoked. It's a sanction that's allowable short of revocation. It's a, it was de facto, it was effectively a revocation. It was a sanction imposed for the conceded violations at that hearing because there was no authority to, it could only be imposed as an alternative to incarceration under the plain language of the statute. Why can't it be an E2 modification of the original conditions? It can't be an E2, it could have been an E2 modification of the original conditions, but then that points you back to 3563B19, which is the equivalent provision of the original discretionary conditions, which says the exact same thing, that you can order someone to remain at their place of residence, except that a condition under this paragraph may be imposed only as an alternative to incarceration. So the language, only as an alternative to incarceration, has to mean something. It cannot be meaningless. So let me just see if I can understand this part of your argument. Could the district court say under 3583E2, I'm going to modify conditions of supervised release and add a condition that at this point you will live at the DC jail until our next hearing. Does court have the authority to impose that as a condition of supervised release? No. Okay, so I would assume then that that's why you're saying that he can't impose home detention, because if he can't impose incarceration and has no authority to impose incarceration, you can only impose home detention as an alternative to incarceration, then you don't have authority to impose home detention as a just kind of condition of supervised release. Correct. That's her position. You do not have authority, and that's clear from the plain language of the statute. The problem is when he said, is this okay with you, you said yes. Right, and it was okay with us. We were okay with the sanction of 60 days of home detention. For the conceded violation at that time, we object to the prison sentence that was subsequently imposed. Well, but when he asked, is this okay, it was more than just home detention. It was his whole two-part approach to this, the temporary stopgap measure while he then figures out whether to revoke. Right, and we understood that that was the sanction for the conceded violations at that hearing was a 60-day definitive sanction, and that when we came back, he would be sanctioning him for the other violations that at that time the government hadn't proven, and at that time we contested. So we viewed the 60-day sanction as a sanction for the positive drug test that Mr. Matthews conceded at that hearing and as a definitive and final sanction for those. We thought we were coming back to only address the other remaining violations, and at that point, the court even mentioned it would be in a position might be in a position to continue him on home detention for a period than 60 days. So the court said when it came back, it would either sentence him. What did you think was happening when it lasted longer than 60 days because of various delay? So in hindsight, I should have objected when there was no hearing, but I should have filed something on the record to object to the continuing home detention, but I assumed that the court was going to consider that period of home detention and sort of count it towards whatever sanction it ultimately imposed for the remaining violations, and that's not what the court did. The court didn't consider it at all, so that was a mistake on my part not to object to the sanction lasting beyond the 60 days, which would have been on January 18th, so the two months of sanction for the positive drug test that was given at the November 17th hearing would have ended on January 18th, and at that point, I kept thinking we were coming back for a hearing, and then the hearing kept getting postponed, and I should have objected to continuing home detention, but I assumed that the court was going to consider that time, that burden, and that sanction that was under the statute an alternative to imprisonment toward the ultimate punishment that the court would impose, and that's just not what happened. Suppose I, even if I were to agree with all your entire argument that you've made to this point, then wouldn't the remedy be then to send it back or maybe vacate and send it back for the district, and whether or not to revoke Mr. Mack's conviction? Violations other than the ones that were the basis for what you say was the first revocation? No, we think the court should vacate the sentence because Mr. Mack, because the condition did continue, it continued past the sanction, so the problem is that, and the other, the only other violations that remained at issue in this litigation were missed drug tests in November and December of 2021, so when the sanction continued in past January 18th, it continued until April 5th, that covered a significant period of time that punished him for the violations that conceded. So we would argue that the court should vacate the sentence of imprisonment because the court imposed an alternative sanction of home detention for all the violations that were issued here. However, I think it's in the interest of time, why don't you get to the second issue? Can I just one question before we do that? Suppose this were the same situation except your client hadn't conceded any violations. Government makes all these allegations about failed drug tests. It's an open question. Judge Leon has concern. He wants to do something interim while figuring out whether or not there were any violations. In that hypothetical, could he have done this two-step thing? Put him on home detention? So the court probably could have put him on home detention under 3143A1 by following the procedures in 3143A1 as outlined in Rule 32.1A6, which is release or detention pending revocation. It couldn't, on your theory, even with no concession, which makes it look more like a punishment, you say he couldn't invoke either E2 or E4 to modify the conditions or impose a remain-at-home order that wouldn't exhaust his ability to impose the later term of imprisonment. No. Under the plain text of the statute, he could only, the court can only impose home detention as an alternative to incarceration. We're back to the either or. Right. But the court could impose home detention as a condition of, I guess, supposedly pretrial release. That's not what happened here. The court didn't impose home detention pending the next hearing. Okay. I'm curious that you're saying that your answer to Judge Katsas' last question, because the text of 3143A1 says that it applies to someone who's been found guilty of an offense and who is awaiting imposition or execution of sentence. And then some other language that I don't think is pertinent, how would that apply to somebody who is on supervised release? Sure. So, the Federal Rules Criminal Procedure 32.1A6, and the committee notes to that rule clarified that a judge can release or detain a person under 3143 pending further proceedings, supervised release proceedings. So, the rule was applied through 32.1 to revocation proceedings. Okay. Well, I understand that that's what the rule says, but I don't think rules give judges authority to lock people up outside of statutory authority. But if that's your position, then we'll take that as your position. And if I could just briefly address the second issue. Yes. I mean, the second issue is very straightforward. There's a bright line rule when the oral sentence conflicts with the written one, the oral sentence controls. Here, the district court imposed one discretionary condition of release. He thought it was very important that Mr. Matthews participate in drug testing. That was important. He announced it at sentencing, and so that is the only condition that was ordered, and the court should excise the additional discretionary condition. Suppose we agree with you. Would we just vacate the conditions that were not orally pronounced? Or would we vacate the entire sentence and then let the district court reimpose? The court should just vacate the conditions that weren't orally announced. This is a bright line rule. And I understand. I'm positing that you win on the merits. I'm just focusing on remedy. And I'm assuming that U.S. v. Love is your authority for that. Yes. And rule 43A, the defendant has a right to be present at sentencing. Judgment sentencing is final. There's nothing that permits a court to reopen that in this circumstance, because I'm unclear as to what would permit the court to reopen that, although the court always add or modify conditions of release when Mr. Matthews is on release via 3583E2 by holding a hearing and imposing conditions of release. So there really is no need to send the case back for resentencing. He could. So if we vacate the conditions that weren't orally articulated and don't remand, you still acknowledge that the district court could modify the conditions under E2 to impose the standard conditions going forward? By following the procedures. Following the procedure in E2. In E2 and 3583E2 and Federal Rule of Criminal Procedure. And could likewise consider the discretionary conditions of the mental health testing. Yes. Yes. And we would have Mr. Matthews would be present for that and he would be on release, it would be very pertinent to his ability to understand his conditions and we would have not to object. So it really doesn't matter, A, whether we vacate in part or vacate entirety or B, remand. We're going to end up at the same place, which is district court. Consider whether to reimpose the standard conditions. It does. It does matter. It does matter. The court should vacate the conditions. They should be reconsidered. They were considered already. The court imposed just drug testing. But we wouldn't be binding the district. You would not be taking its hands to modify or impose other conditions in the future. Judge Rao, do you have any questions? No, thank you. We'll give you some time on rebuttal. We'll hear from counsel for the United States, Mr. Lennards. Thank you, Your Honor. Good morning and may it please the court. My name is Dan Lennards and I represent the United States. I'd like to apologize in advance if there are any technical difficulties during my argument. Although I represent the United States, I'm not currently in the United States, so I'm hoping all goes well. If I might start with Judge Wilkins' questions about preservation, we believe that the defendant preserved one and only one argument below, which is that because the district court imposed some term of home confinement, it was statutorily precluded from imposing any term of incarceration when it revoked the defendant's supervised release in April of 2022. All of these other arguments about whether the court could permissibly modify the conditions of the supervised release to add home detention as a condition or whether double jeopardy is implicated were not raised below and therefore reviewed at best for plain error. As to the defendant's argument that in November 2021, they believed that Judge Leon was effectively revoking supervised release and sentencing the defendant to a term of home confinement and therefore that he had no power to then act upon the same failed drug tests that ultimately led to that decision and the subsequent revocation, that's belied by the defendant's sentencing memoranda before the April 2022 revocation in which Matthews conceded that the district court could continue him on home incarceration as a condition based on the revocation and asked merely that the court not extend it beyond six months. So even if Judge Leon wasn't clear, which he was abundantly clear in November of 2021, that he was not revoking, that he was punting that decision until the full scope of the violation conduct had been established and that he was merely modifying the conditions on a time. Let me just make sure I understand kind of like all the kind of contours of the government's position here. Let's suppose there had been no concession that any supervised release had been violated. Does the district court have authority under 3583E2 to modify conditions of release and say, I think that just because of how things are going here, I need to add a condition of incarceration. And so I'm going to incarcerate the defendant here and we'll come back in 30 days or something for further hearings. Does the district court have authority to do that? I don't believe so, your honor, and that's because of a separate statutory section. So one condition of probation that a district court may impose is intermittent confinement. That's under 3563B10. But in the supervised release violation statute 3583D, the Congress said that intermittent confinement shall be imposed only for a violation of a condition of supervised release. And so it's a separate reason why the answer is no. But the reason is that Congress spoke clearly in 3583D and said that intermittent confinement may only be imposed as a result of a violation. Congress did not include similarly clear and direct language in 3583D about the home detention as a condition of probation due to a modification. And thus we think that that's why those two scenarios are distinguishable. Well, you're getting ahead of me. I mean, you're anticipating where I'm going with this. But just so that we're clear, you agree the district court doesn't have authority to order incarceration, whether it's intermittent or continuous, as a condition of supervised release. You agree with that, yes? Due a modification. Yes, that's right. Due a modification. So then how does the district court have authority to, as a condition of supervised release, order home detention as an alternative to incarceration where the district court doesn't have the authority to order incarceration? That, I think, depends on the language of 3563B-19, which has a separate meaning. That's the probation statute. It's not solely limited to its interaction with the supervised release statute. So that language has independent meaning when a judge is, for example, setting the initial conditions of probation or revoking probation. In both of those instances, intermittent confinement under 3563B-10 is something that the court has authority to impose, either as a condition of probation or after a revocation of probation. And so that language, that limiting language in 3563B-19 that says that home confinement may not be imposed as an alternative to incarceration does separate work. It has meaning within the probation revocation context, but we don't think that it limits the court's authority to modify home confinement. But this argument was not preserved below. This argument is something that the defense could have and should have objected to in November of 2021, when Judge Leon said, I am temporarily changing the conditions of supervised release to impose home confinement while we work out all of the scope of your violations, and then I sentence you. He could have been clearer that that was a modification. The defense, as you've noted. Sorry, are you done with the thought? Yes, Your Honor. The same language, only as an alternative to incarceration, so appears in 3583B-4. And in that context, alternative raises the question, alternative to what? Incarceration in 3584B-4 would seem to be the alternative to a term of imprisonment authorized in E-3, right? Which brings this question right into the heart of the supervised release question. You can't just say, well, this is just about B-10 versus B-19 in a probation-only world. Yes, Your Honor, for purposes of the supervised release revocation statute, we understand the language in E-4 to implicate the statutory cap set forth in E-3. Meaning, if the cap is two years of incarceration, then home confinement plus incarceration cannot exceed two years. That's how every court, as I understand it, to have looked at this question, understands it. And it makes sense. Supervised release is a period in which the court supervises the defendant during his transition to society. Congress has made clear that it wants courts to have broad discretion in fashioning the conditions of supervised release, not to limit them. And it works as a plain language understanding, because alternative, in the you either have four apples or four oranges, because apples are an alternative to oranges. But they're still an alternative if you have two oranges and two apples. Apples, in that context, are still an alternative. And that's what we- So that all makes sense to me. And that seems like a perfectly good response to the broadest argument on the other side, which is, if you do any of one, you can't do the other. But what about- I think this is Judge Wilkins' point on the timing question, which is, only as an alternative to incarceration seems to presuppose that incarceration is an option. And that wasn't true at the time of the first hearing when Judge Leon imposed the home detention, because he hadn't adjudicated the violation. He was reserving all of that. It's true that he was reserving it. It was certainly on the table, given the defendant's concession. The defendant had conceded a violation that put revocation and incarceration on the table. But this is why I think the interaction between E2 and E3 is important, and the waiver issue is important, or the plain error issue, which is that alternative to incarceration in E4, that goes to whether that affects the ability to modify in E2, which then takes you to 3563B19. And that the defendant did not preserve. They did not preserve the argument in November of 2021 that you may only put me on home confinement now if you are, in fact, revoking. Suppose I think it's preserved. What's your merits to this narrow point that, of course, you can mix and match, but you can only do it after you've adjudicated the violation that establishes incarceration as one possible? I think the answer to that, Your Honor, is that this alternative to incarceration does not limit the court's power under E2 to modify the conditions of supervised release. That the E2 has no limitation. It has no required finding of probable cause. It doesn't have to find a supervised release violation in order to modify. It simply needs to take into account the 3553A factors. And that because home incarceration is one of the permissible conditions of probation and supervised release under 3563, that the court nonetheless has that power. Under 3563, though, there's also the condition of it being only as an alternative to incarceration. And, yes, Your Honor, and I think that my understanding of that language is that it modifies the court's ability in the probation context to impose home confinement versus intermittent incarceration, but doesn't do separate work in the supervised release context. And Congress added that language. It added it in three separate places. It added the identical language for probation, supervised release, and parole. So shouldn't it mean the same thing in all three places? Why wouldn't the language mean the same thing and Congress have the same intent for it to have the same effect in all three contexts and do the same work in context? I have two answers to that, Your Honor. One is it could, and nonetheless, our interpretation could be correct. In all three contexts, it could implicate the statutory caps on the amount of incarceration a court may impose due to a violation. There are statutory caps in the supervised release context, statutory caps in the probation context, and I believe in the parole context, including one in B-10, right? Yes, B-10 itself has its own cap, which is no more than a year or the maximum term of incarceration or something. I don't have the exact language in front of me, but B-10 itself has a statutory cap on the amount of intermittent confinement a court may impose. And so, in that respect, they would all have the same meaning, and that's how Judge Owens understood it in her concurrence in Polidor, the Fifth Circuit. How would it work in the parole context? I don't do much parole work, Your Honor, and so I don't have an answer to that. I'm sorry. I know there's some, you know, the parole would be revoked and then a defendant would be re-paroled and there would be credit for time served, but not for street time, and I don't know exactly how the statutory caps would work in the parole context. Is there a statutory cap? I mean, your theory sort of hangs together if within probation, the alternative to incarceration is the intermittent custody in B-10, which has its own cap, and within supervised release, the alternative to incarceration referenced in E-4 is the incarceration authorized in E-3, which has its own cap. I don't know what the analog in parole is. Yes, Your Honor, I don't. That's where you're going with it? That's where I'm going with it. I don't have the answer for how it works in the parole context. All right. Any other questions, Judge Rowell? Yes, Mr. Winters, on the second point, if we were to agree with the defendant about the oral pronouncement of the conditions, do you agree that the remedy is the same, whether we vacate and then remand for resentencing, or we allow the district court to impose conditions of supervised release in a subsequent hearing? I would urge the court not to agree with the defendant. We've cited a couple of cases from Ninth and Second Circuits that find at least the standard conditions to be implicit when the court imposes supervised release, but if the court disagrees with me, then we would urge the court to follow the approach taken by the Fourth Circuit and the Seventh Circuit in this context, which is to remand for resentencing on the conditions of supervised release. I think on theory that there is ambiguity between the courts placing the defendant on supervised release, the fact that the sentencing guidelines have these standard conditions that seem to be implicit, but the fact that the court didn't orally pronounce it. As I understand those courts, they said there's an ambiguity there, and this court in Luff says when there's an ambiguity, you can remand for that to be clarified. The defense is, I believe, correct that if this court took the approach that the Fifth Circuit takes, albeit with some question in their en banc decision applying the oral pronouncement rule to the supervised release context, they dropped a footnote questioning the wisdom of this rule, but if the court were to simply vacate all of the standard conditions and all of the special conditions, I think what would happen is the government would have to move for modification of the conditions of supervised release and ask the court to reimpose both the standard and the special conditions. I'm not aware of any legal impediment to the court doing so. It would simply mean that the defendant would be on supervised release with no conditions except for the mandatory conditions until that issue was resolved. I'm sorry, you're asking us to vacate the entire sentence and remand for resentencing? No, Your Honor, I'm sorry. I believe Judge Raul asked if the court agrees that there are no conditions. Assume we agree with the Fifth and Fourth Circuits on this. The conditions in the written sentence that weren't orally pronounced are currently invalid. What do we do? Remand for resentencing as to the conditions of supervised release. Without vacature? Yes, without vacature. That's a little odd. The consequence of our ruling is that the written sentence has a bunch of conditions that are valid. We have a remand without vacature doctrine in administrative law. I don't ever applied it to a criminal sentence that we found invalid in part. Are you aware of cases in which we have remanded without vacator after finding that a sentence was unlawful? I am not, Your Honor, and I admit that I'm on the case. We would urge the court to follow the Seventh and Fourth Circuit, which mandates a new proceeding for the court to resentence, rather than the Fifth Circuit, which requires the government to move for a modification. But I think you're probably right that under either scenario, vacating the written judgment would be appropriate. Why wouldn't we just vacate the offending conditions? And I would think the more technically correct remedy, and the one that's more in the government's interest in most cases, is we tailor the remedy to the violation, only give as applied relief. The judgment is fine in part, and invalid in part. We only knock out the portions that are invalid. Yes, Your Honor. I'm sorry. I was speaking quickly in shorthand, but that's what I mean. Here, that's virtually every condition. The only conditions that were, if the court— The mandatory ones. And the drug testing condition that the court orally imposed. In Love, this court found that in the supervised release conditions context, the court can use the written judgment to clarify conditions such as this. And we think that when the court said, I impose drug testing, and then put more specific conditions on it in the written judgment, that that's permissible under Love. And so the court would be vacating everything but the mandatory, statutorily required conditions. And the term of imprisonment. And the term of imprisonment. Assuming we agree with—assuming we're with you on the first point. Yes, Your Honor. And then would we remand? Would we remand? Does it matter whether we remand for the district court to pick up the ball in the context of this case, or whether we set aside the conditions, we're done with everything, but of course that doesn't prevent a future modification that just starts on its own. I think this is where the government would request a remand so that there is a proceeding in place for the district court to consider the imposition of new conditions rather than it having to be through a modification. Okay. All right, Judge Rau, any other questions? Thank you. All right, thank you, Mr. Lennertz. Getzel, we will give you two minutes in rebuttal. Thank you. As an initial point, plain error, if it applies here, is easily met. An unlawful sentence is always plain error, and we're arguing that the sentence is unlawful. The second point I want to make is that the timing in this case, it matters and it's crucial. So even in the cases that say you can combine home confinement and imprisonment in a combined sentence, the judge sentences and says it's sentencing to a term of imprisonment, but it's exercising leniency by making part of it home detention. That is not what happened here. So the timing of, and in all of those other cases, it's imprisonment followed by home detention. That's not what happened here. It was home detention, a sanction, and then I'm putting you in prison for the same exact thing. And that violates due process, it violates 3583, and it violates- But the order that we have in front of us is not the order that placed them in home detention. It's the order that placed them in incarceration, right? Correct, Your Honor. That's why the incarceration was unlawful, because home detention had already been imposed for the same thing. And the last point I want to make about the supervised release conditions is that it's terribly inefficient to send a case back when the conditions can just be vacated. Courts in the future will renounce the conditions at sentencing, otherwise there are countless cases getting sent back when conditions weren't announced, and the government just wants it sent back so they don't have to do anything, and that's unfair to Mr. Matthews. It basically means it gets remanded for him to get a harsher sentence and more conditions that he currently doesn't have that the district court did not deem important to impose. And so we would ask the court to vacate. In the alternative, we would ask for a full remand on the entire budget. Thank you. Thank you. We will take the case under advisement.
judges: Wilkins, Katsas, Rao